In re Raymond John McDERMOTT,
Debtor.

Joan CORDEIRO a/k/a Joan
Jenard, Plaintiff,

v.

Raymond John McDERMOTT,
Defendant.

Bankruptcy No. 91–11338.
Adv. No. 91–1160.

United States Bankruptcy Court,
D. Rhode Island.

March 17, 1992.

Daniel E. Chaika, Chaika and Chaika,
Cranston, R.I., for debtor.

Richard A. Pacia, Pacia & Pacia, Ltd.,
Pawtucket, R.I., for plaintiff.

## DECISION

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on December 16, 1991 on the Complaint of Joan Cordeiro, brought pursuant to 11 U.S.C. § 523(a)(2)(A), to determine the dischargeability of her claim against the Debtor John McDermott, in the amount of $10,000.

## FACTS

Cordeiro and McDermott met in June, 1988, and soon developed what they both term a "boyfriend-girlfriend relationship," seeing each other several times a week and occasionally spending weekends together.

During the course of their relationship, Cordeiro enjoyed and was impressed with McDermott's lifestyle: he lived in a restored waterfront condominium; he owned a $75,000 boat; he frequented and entertained friends at expensive restaurants; he drove a late model, prestigious foreign car, etc.

However, nothing lasts forever, and one evening in August 1989, after having dinner with his mother and Cordeiro, McDermott went to Cordeiro's house where he told her of a serious problem he had at work. McDermott explained that he was in trouble because of an overdraft on a business account involving a property managed by him, and that he "really needed" $10,000, immediately, to replace the overdrawn funds.[1] McDermott maintains that after hearing about his dilemma, Cordeiro spontaneously volunteered to loan him $10,000 to solve his problem, while Cordeiro claims that he clearly prevailed upon her to advance him the money.[2] In any event, what resulted, by admission of both, was an undocumented $10,000 loan on August 22, 1989, without an established due date, or any other specific terms. Cordeiro's uncontradicted testimony is that based on

what was said to her by McDermott, she expected the loan to be "short term."

McDermott testified that shortly after he received the $10,000, he experienced a series of failed business deals.[3] In the process, along with the deterioration of the real estate market and his earning capacity, McDermott lost his apartment, his boat, and his car.

Also, and almost simultaneously with the loan, the nature of the friendship between McDermott and Cordeiro began to change, and by December 1990, the relationship was over. Cordeiro testified that during this transition period it was not unusual to see McDermott still frequenting places they used to go, including the Capital Grille and other stylish restaurants. Also during this period, and while Cordeiro was hearing from him less often, McDermott was making sporadic, interest only, payments on the loan, and was becoming more and more delinquent on both his financial obligation and the regularity of his social calls to her.

On January 30, 1991, after what Cordeiro characterized as "repeated requests" to have him sign a promissory note to evidence the loan, McDermott finally did execute a formal document, which provided, inter alia, for a finance charge of 1.5% above prime, credit line insurance, 5% late charge, and an acceleration clause. *See* Exhibit A, at 1. The note also purported to be effective "as of August 22, 1989," as indicated by handwritten margin notes. *See* Exhibit A, at 2.

On May 22, 1991, less than four months after signing the note, McDermott filed his Chapter 7 petition.

## DISCUSSION

Section 523(a)(2)(A) excepts from discharge "any debt for money, property, [or] services ... to the extent obtained by—false pretenses, a false representation, or actual fraud...." 11 U.S.C.

---

1. The circumstances of the overdraft are irrelevant to our analysis, but McDermott's need for quick cash seemed to be quite urgent.

2. That factual determination is not pivotal or dispositive, but if required to choose, we would

accept Cordeiro's characterization of what really happened.

3. McDermott has not met his burden as to the existence of these anticipated, alleged business opportunities, all of which failed to materialize.

§ 523(a)(2)(A). We have previously discussed the elements necessary to sustain an action to have a debt determined to be nondischargeable under this section, *i.e.* the plaintiff/creditor must prove:

1. that the borrower made representations;

2. which at the time were known to be false;

3. that such representations were made with intent to deceive the creditor; and,

4. that the creditor detrimentally relied on said representations.

*Weeden v. Monahan (In re Monahan)*, 125 B.R. 697, 699 (Bankr.D.R.I.1991). The burden of proof is on the party seeking the exception to discharge. *Id.; In re Fenninger*, 49 B.R. 307, 309 (Bankr.E.D.Pa. 1985), and each element must be established by a preponderance of the evidence. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Monahan*, 125 B.R. at 699.

■ Regardless of which party provided the impetus for the loan, it is clear that representations were made by McDermott on the evening of August 22, 1989 with respect to repayment, thereby satisfying the first element. Cordeiro in fact relied upon and acted on McDermott's representations, to her detriment by advancing $10,000. (She is currently owed $11,146.82,[4] with little prospect of receiving payment unless she prevails in this proceeding.)[5] The fourth element is therefore satisfied. It is elements two and three—knowledge and intent—which are at issue here. These elements bear closely on each other in this situation.

■ In order to satisfy elements two and three, McDermott's representations concerning his ability to repay the loan must be established as objectively false or deceptive. To apply a subjective standard would open the door wide to all manner of imaginary defenses in dischargeability actions. McDermott in fact testified that he always felt a "moral obligation" to repay Cordeiro, and that at the time of the loan he fully intended to repay her. However, even accepting these representations (arguendo) to be true, it is McDermott's actual ability to perform as promised which is dispositive. In other words, the borrower's ability to perform as promised must be objectively reasonable.

■ One source for determining the reasonableness of the Debtor's stated intention is his Schedule of liabilities and assets. McDermott's Schedule A lists over $125,000 in unsecured debt; Schedule B lists $4,350 in assets.

A closer inspection of the schedules reveals pre-August 1989 debts as follows: Apex—household goods 1985, ($1,408); Briggs Ltd.—clothing, June 1988 ($1,235); Chase Auto Leasing—car lease, 1986 ($13,505); Connecticut National Bank—boat loan, July 1986 ($73,500); MBNA—consumer goods, January 1986 ($8,258); and Sears—household goods, 1986 ($1,413). So at the time McDermott borrowed $10,000 from Cordeiro, his financial situation was not much better than what it was immediately before he filed his bankruptcy petition, as he had liabilities of nearly $100,000, insignificant assets, no equity in property, and an annual gross income of only $35,000.

Also relevant to an objective evaluation of McDermott's ability to repay the loan was his familiarity with the Rhode Island real estate market, and with the economy in general, in the second half of 1989. Times were getting worse, and everyone knew it, including the Debtor, who is charged with having better than average knowledge of the condition of the economy.

■ Given the Debtor's prior track record, his promise to repay the $10,000

---

**4.** The Debtor does not contest the claim for interest.

**5.** The element of "reasonable reliance" by the creditor is not required in actions under § 523(a)(2)(A), although it would be required under § 523(a)(2)(B). *See FDIC v. Calhoun (In re Calhoun)*, 131 B.R. 757, 759 (Bankr.D.D.C. 1991); *In re Monahan*, 125 B.R. at 699. This may be a distinction without a material difference in this case, however, because we accept Cordeiro's testimony that she was unaware of McDermott's actual financial condition in August, 1989.

loan within a short period of time, from revenue to be generated through anticipated real estate "deals," was not reasonable.[6] Considering the totality of the circumstances, *see Monahan,* 125 B.R. at 701, there is no way that McDermott could reasonably have expected to repay the loan as promised, or at all, for that matter. To whatever extent McDermott may have believed that he could pay the Cordeiro loan within a short time, he was deceiving not only Cordeiro, but himself as well, in light of his financial situation [7] before and at the time of the loan, and given the condition of the sector of the economy in which he earned his living. We also find that had Cordeiro been aware of McDermott's true financial condition in August 1990, she would not have loaned him the $10,000.

Accordingly, since all of the elements of the § 523(a)(2)(A) complaint have been satisfied, the Debtor's obligation to the Plaintiff is determined to be nondischargeable, and it is so ORDERED.

Enter Judgment consistent with this opinion.

---

6. Although "subsequent conduct [non-payment] contrary to a former representation by [the] debtor does not necessarily establish the original representation to have been false," the Court is not foreclosed from viewing such conduct as evidence of both the debtor's intent and the reasonableness of the ability to perform at the time of the representation. *Monahan,* 125 B.R. at 701 (quoting *In re Boese,* 8 B.R. 660, 662 (Bankr.D.S.D.1981)).

7. There is no credible evidence that Mr. McDermott *ever* had the earning capacity to support his debt structure in August 1989, even without the addition of a short term $10,000 obligation. At the time of the loan in question, McDermott was earning $35,000 annually as a real estate consultant and manager. In 1990, he made $20,000. He currently earns $860 per month (net) as a car salesman.

## 54

### PROMISSORY NOTE

$10,000.00                          Cumberland, Rhode Island

August 22, 1989

FOR VALUE RECEIVED, the undersigned promises to pay Joan Jenard, or order, the principal sum of Ten Thousand ($10,000.00) Dollars, with interest on the unpaid principal balance from the date of this Note, until paid, at the following rate: The ANNUAL PERCENTAGE RATE used in calculating the FINANCE CHARGE is a variable rate and will be determined by adding 1½ (one and one half) percentage points to the highest Prime Rate published in The Wall Street Journal on the last day of the billing cycle. The Daily Periodic Rate will be the ANNUAL PERCENTAGE RATE divided by the number of days in the year and will vary monthly with the ANNUAL PERCENTAGE RATE. The Annual Percentage Rate will never be more than the maximum rate allowed by law or 21%, whichever is less. Interest shall be payable at 17 Morpheus Drive, Cumberland, Rhode Island or such other place as the Note holder may designate, in consecutive monthly installments of a minimum of the FINANCE CHARGE plus CREDIT LINE INSURANCE ON THE 10th (tenth) day of each month beginning October 10, 1989. Such monthly payments shall continue until the entire indebtedness evidenced by this Note is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on August 21, 1990. JANUARY 31, 1991

If any monthly payment under this Note is not paid when due and remains unpaid after a date specified by a notice to Borrower, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of the Note holder. The date specified shall not be less than thirty (30) days from the date such notice is mailed. The Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. If suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

Borrower shall pay to the Note holder a late charge of Five (5%) percent of any monthly installment not received by the Note holder within fifteen (15) days after the installment is due.

Borrower may prepay the principal amount outstanding in whole or in part. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent monthly installment, unless the Note holder shall otherwise agree in writing.

Presentment, notice of dishonor, and protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligations of all makers, sureties, guarantors, and endorsers, and shall be binding upon them and their successors and assigns.

Any notice to Borrower provided for in this Note shall be given by mailing such notice by certified mail addressed to Borrower at 555 South Main Street, Unit 324, Providence, Rhode Island 02903, or to such other address as Borrower may designate by notice to the Note holder. Any notice to the Note holder shall be given by mailing such notice by certified mail, return receipt requested, to the Note holder at 17 Morpheus Drive, Cumberland, Rhode Island 02864, or at such other address as may have been designated by notice to Borrower.

_____          Raymond J. McDermott
Notary Public

ACTUALLY SIGNED

_Paul B. Johnson_  1/30/91
WITNESS + DATE

*$10,000.00 Peoples Bank Currently Shown Bank of Rhode Island Home Equity Line check written 8/22/89 to Raymond McDonald check # 113 + posted in 8/24/89 as a loan of this paid with... with only actual interest due when billed + credit for payment + LATE FEES ... until due date which will not be paid by 8/22/90*

| DATE | PREVIOUS BILL | PAYMENT | AVERAGE DAILY BALANCE | FINANCE CHG & LATE FEE CREDIT LINE INS. CHG | NEW BALANCE | STATE CHARGE/10 PAYMENT | FINANCE CHAR |
|---|---|---|---|---|---|---|---|
| 12/31/87 | 10,000.00 | | | | | | |
| 1/29/89 | 10,105.73 | –0– | 10,105.73 | | | | |
| 1/31/89 | 10,105.73 | 105.73 | 10,000.00 | 109.26 | 10,109.26 | — | — |
| 12/3/89 | 10,109.26 | 109.26 | 10,000.00 | 111.15 | 10,111.15 | — | — |
| 1/1/90 | 10,111.15 | 111.15 | 10,000.00 | 109.26 | 10,109.26 | — | — |
| 1/31/90 | 10,109.26 | 109.26 | 10,000.00 | 109.26 | 10,109.26 | — | — |
| 1/28/90 | 10,109.26 | 109.26 | 10,000.00 | 94.85 | 10,094.85 | — | — |
| 1/4/90 | 10,094.85 | 132.66 | 9,962.19 | 115.16 | 10,077.29 | — | — |
| 1/1/90 | 10,077.29 | 101.70 | 9,975.59 | 121.49 | 10,097.08 | — | — |
| 1/4/90 | 10,177.08 | 104.86 | 9,972.22 | 103.23 | 10,075.45 | — | — |
| 1/1/90 | 10,075.45 | 10.98 | 9,994.47 | 108.71 | 10,025.18 | — | — |
| 1/2/90 | 10,675.18 | 109.23 | 9,915.95 | 108.90 | 10,024.85 | — | — |
| 1/4/90 | 10,074.85 | –0– | 10,074.85 | 92.55 | 10,172.40 | 4.88 | 10,177.28 |
| 1/4/91 | 10,177.28 | –0– | 10,177.28 | 103.20 | 10,280.48 | 5.16 | 10,285.65 |
| 5/1/90 | 10,285.65 | –0– | 10,285.65 | 110.86 | 10,396.51 | 5.54 | 10,402.05 |
| 1/10/90 | 10,402.05 | –0– | 10,402.05 | 109.54 | 10,511.25 | 5.13 | 10,516.38 |
| 1/1/91 | 10,516.38 | 200.07 | 10,396.38 | 114.49 | 10,510.87 | — | — |
| 1/4/91 | 10,510.87 | –0– | 10,510.87 | 96.58 | 10,607.45 | 4.83 | 10,612.28 |
| 1/1/91 | 10,612.28 | –0– | 10,612.28 | 93.25 | 10,705.60 | 4.67 | 10,710.27 |
| 1/1/91 | 10,710.27 | 100.00 | 10,610.27 | 94.62 | 10,704.89 | — | — |
| 1/1/91 | 10,704.89 | –0– | 10,704.89 | 93.84 | 10,798.73 | 4.69 | 10,803.42 |
| 1/1/91 | 10,803.42 | –0– | 10,803.42 | 85.83 | 10,889.25 | 4.29 | 10,893.54 |
| 1/5/91 | 10,893.54 | –0– | 10,893.54 | 92.52 | 10,986.06 | 4.63 | 10,990.69 |
| 1/1/91 | 10,990.69 | –0– | 10,990.69 | 36.13 | 11,026.82 | | |
| 5/1/91 | 10,990.69 | –0– | 10,990.69 | 93.34 | 11,084.03 | 4.67 | 11,088.70 |
| 1/1/91 | 11,088.70 | –0– | 11,088.70 | 91.14 | 11,179.84 | 4.56 | 11,184.40 |
| 1/1/91 | 11,184.40 | –0– | 11,184.40 | 87.33 | 11,271.73 | 4.37 | 11,276.10 |
| 1/1/.. | 11,276.10 | –0– | 11,276.10 | 64.04 | 11,310.68 | | |