**In re David BRAIZBLOT and Martha Braizblot, Debtors.**

**Ilisa DALY and Scott Daly, Plaintiffs,**

v.

**David BRAIZBLOT and Martha Braizblot, Defendants.**

**Bankruptcy No. 895–80483–478.
Adv. No. 895–8128–478.**

United States Bankruptcy Court,
E.D. New York.

April 8, 1996.

Scott and Ilisa Daly, Douglaston, NY, pro se.

David J. Doyaga, Brooklyn, NY, for David Braizblot and Martha Braizblot.

### DECISION DENYING DISCHARGE OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to an adversary proceeding commenced by Ilisa and Scott Daly (the "Plaintiffs") against David and Martha Braizblot (the "Debtors" or the "Defendants") seeking to have the debt owed to the Plaintiffs in the amount of $113,000 plus interest in the amount of $38,994 deemed non-dischargeable under 11 U.S.C. section 523(a)(2)(A) and/or (a)(2)(B). Based on the record before the Court, the Court finds that the Plaintiffs have not proven a prima facie case by a preponderance of the evidence under section 523(a)(2)(B) of the Bankruptcy Code (hereinafter referred to as the "Code"). However, the Plaintiffs have met their burden under section 523(a)(2)(A) of the Code as they have established by a preponderance of the evidence that the Defendants fraudulently induced the Plaintiffs to loan them the funds, upon which the Plaintiffs' reliance was justifiable given the facts and circumstances of this case. The Defendants have failed to sufficiently rebut the Plaintiffs' case, and have failed to demonstrate with any credible evidence that the Defendants have paid back any portion of the principal owed on this debt.

### FACTS

Plaintiff Ilisa Daly is the sole owner of Debra, Inc., an export corporation. She and her husband are acting in this adversary proceeding *pro se*. The Debtors owned a corporation called NINI Cosmetics, Inc. (herein "NINI"). Mrs. Braizblot was an employee of Debra, Inc. from 1984 through 1990. (Trial transcript (herein "Tr.") at 42). Thereafter, she formed her own business NINI and continued to have a business relationship with Debra, Inc. in addition to a personal one with the Plaintiffs. The Plaintiffs and the Defendants both agree that they had a very close personal relationship which went far beyond that of employer-employee, or mere business relationship. Over the years, at the request of the Defendants, the Plaintiffs and Debra, Inc. extended approximately $311,000.00 in loans to the Defendants. (Tr. at 168). Throughout their personal and business relationship, neither party was represented by an attorney in connection with the matters at hand. A summary of the

loans in question made by the Plaintiffs personally are as follows. On or about August 21, 1986 both the Plaintiffs and the Defendants executed a promissory note from the Defendants to Plaintiffs in the amount of $45,000.00. In 1988 the Plaintiffs made two additional loans to the Defendants, which were not documented until 1990; one in June of 1988 for $49,000.00 and one for $29,000.00 extended in July of 1988. An additional note encompassing all previous debts owed by the Defendants to the Plaintiffs was executed by the same parties in the amount of $123,500.00 on April 23, 1990. This note was to be satisfied in monthly installments at an annual rate of 14% interest. The corporation Debra, Inc. made several separate loans to Defendants, which are not the subject of this adversary proceeding.

The first loan, in the amount of $45,000.00, was made by the Plaintiffs to enable the Defendants to purchase a home. The Defendants orally represented to the Plaintiffs that they had obtained a mortgage from Citibank, but Citibank would not lend the moneys if the Defendants had to borrow the funds for the down payment. As close friends, the Plaintiffs wished to assist the Defendants in any way they could. As further inducement for the loan, the Defendants orally represented to the Plaintiffs that they would receive a second mortgage on their residence, and agreed to obtain life insurance for Martha Braizblot, naming the Plaintiffs as loss-payees. The repayment of the loan was to be in three installments every three months beginning in February 1987 at 12% annual interest. It is undisputed that this loan was made to the Debtors in their personal capacity. To memorialize the terms of their agreement, Martha Braizblot prepared a one page document, which post-dated the loan, stating the amount of the loan, the payment terms and the interest rate. (Plaintiffs' Exhibit C). The document also sets forth that Martha Braizblot planned to repay the Plaintiffs based on payment to her from specific orders she had obtained from Prebel and Cosmair, and that she planned to obtain a life insurance policy naming the Plaintiffs as beneficiaries. In Ilisa Daly's handwriting, the following was added to Exhibit C: "alternative—2nd mortgage on the house—"; "second [mortgage]—between us [two] have to do it" (Tr. at 64), which indicates the negotiations between the parties of their arrangement.

The two loans in 1988 were made in order to permit the Debtors to fill certain orders for NINI. Such order slips were presented to the Plaintiffs by the Debtors and assurances were made that once the money from these orders were received by NINI, the loans would be repaid. (Tr. at 4).

The promissory notes both provided the following language: "In addition, Maker agrees to secure Life Insurance policy to cover value of Loan with Payee named as beneficiary." These two promissory notes both also provided that "Maker has deposited with Citibank the Title and Deed covering House and Land located [at # 2 Branding Iron Lane in Glen Cove, L.I.] for loans given by Citibank. Maker hereby assigns all Rights, Title, Deed and Interest in and to the aforesaid property to the Payee, provided that such conveyance shall be effective only upon default of repayment of this promissory note." (Plaintiffs' Exhibits A and E). The Defendants made minimal attempts to abide by these written agreements. The Plaintiffs acted without counsel, and although they were conducting business, they did not record this purported "assignment." However, this does reflect the intent of the parties, *i.e.* that Defendants were assuring the Plaintiffs that they would recognize and pay the loans if they defaulted.

No steps were taken by the Defendants to secure the life insurance policy to cover the amount of the loan, or to effect a security interest in the real property acquired from the loan proceeds pursuant to the promissory notes. An insurance policy was taken out on June 17, 1989 which named Ilisa Daly as the beneficiary which was in effect for only one year, while the loan remained unpaid beyond this one year period. Thereafter, the Defendants never renewed the policy nor did they acquire a substitute policy. The Plaintiffs testified that they relied on the Defendants' promise to repay the Plaintiffs using the specific accounts receivable from Mercantile and Prebel for cosmetic orders. (Tr. at 4, 35,

45, 46 and 61). Along with promising to repay the Plaintiffs with funds derived from cosmetic orders, the Defendants also used their close personal friendship to induce the Plaintiffs to make the loans, which admittedly was a factor in the decision by the Plaintiffs to loan the funds. (Tr. at 65). The Plaintiffs attributed their own failure to pursue obtaining a second mortgage to their naivete, claiming that they simply were not aware of the manner in which one would go about obtaining a second mortgage. (Tr. at 67).

The Plaintiffs testified that as each deadline for the repayment of the loans approached, the Defendants would manufacture an excuse for not repaying the loan, stating that the orders did not come in properly, (Tr. at 67–8) or that receipt of the funds was being delayed. (Tr. at 66). In fact, the Plaintiffs indicated that they never were told with certainty that the orders in question were paid, and it was not until the Plaintiffs received the Defendants' answers to interrogatories in this adversary proceeding that they discovered that the Defendants had actually received payment on the orders on a timely basis. (Tr. at 32, 67, 68).

Despite the Defendants' failure to pay the principal due in a timely manner the Defendants did make interest payments on a sporadic basis. (Tr. at 138 and 150–2). Such interest payments ended prior to April 23, 1990.

On April 23, 1990, the Parties executed another note in the original principal amount of $123,500.00, which note states that it "void[s] any previous note issued." (Plaintiffs' Exhibit E). The amount of the note almost exactly corresponds to the original principal amounts due on the three prior loans ($123,000.00). The Defendants provided no evidence that the new note represented the amounts due on any obligation other than the prior loans discussed above. The note appears to represent a negotiation of the amounts due under the three prior loans. The note calls for monthly repayment of the principal with 14% annual interest. In addition, the agreement stipulates that the Plaintiffs are to be given a security interest in the Defendants' home and land which was purchased with the original $45,000.00 loan in 1986 and that the "Maker agrees to secure a Life Insurance and Disability Insurance Policy with the Payee named as beneficiary and to keep said policies in effect until this note has been satisfied." (Plaintiffs' Exhibit E). This document appears to be a restatement of the debt owed, a renewed or continuing promise to repay, and the restatement of the terms and conditions of their prior agreements.

There were numerous claims made by the Defendants of repayment of principal and interest pursuant to the three loans at issue. The Defendants also represent that there were various payments made on the loans by endorsing commission checks made out by Debra, Inc. to NINI and returning such checks to Ms. Daly. The court has only been provided with a copy of one such unendorsed check in the amount of $33,151.00. (Tr. at 110 and at Defendants' Exhibit 7). However, the Debtor acknowledged at the trial during cross-examination that *she* had made the following notes on the check: "repayment loan on the house" and "loan from Debra." The Debtor further acknowledged that it "could be" that the check in question represented repayment to Debra, Inc. for a loan made by Debra, Inc. to the Debtor for the house in the amount of $30,000.00. (Tr. at 144).

With respect to the remainder of the checks from NINI which were made out to "cash" (Defendants' Exhibit 7), there is no supporting evidence that the funds were used to pay the Plaintiffs back the principal which was due on the loans in question. In addition, all of the checks included in Defendants' Exhibit 7 are dated prior to 1989, which predates the re-negotiation of the amounts due to the Plaintiffs. Therefore, the checks included in Defendants' Exhibit 7 either went towards interest payments prior to the renegotiation and did not reduce the principal, or were for repayment of other loans made on specific orders as indicated on the "memo" portion of each check.

On January 26, 1995 the Debtors David and Martha Braizblot filed a bankruptcy petition under Chapter 7 of the Code in the Eastern District of New York. The Debtors' schedules listed the Plaintiffs as creditors

and referred to the loans now in dispute as "loans to [NINI] during 1988 through 1990, plus interest, *undisputed,* of [$147,276.32]." (Tr. at 127). (Emphasis added).

## DISCUSSION

The Plaintiffs' complaint cites and raises as a basis for an objection to the discharge of the debt owed by the Debtors to the Plaintiffs subsections (A) and (B) of 11 U.S.C. section 523(a)(2).

Section 523(a)(2)(A) of the Code provides in relevant part:

> (a) a discharge under Section 727 ... does not discharge an individual debtor for any debt ... (2) for money, property, services, or an extension, renewal, or financing of credit, to the extent obtained by—
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition;

Section 523(a)(2)(B) provides in relevant part:

> (a) a discharge under Section 727 ... does not discharge an individual debtor for any debt ... (2) for money, property, services, or an extension, renewal, or financing of credit, to the extent obtained by—
>> (B) use of a statement in writing—
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or insider's financial condition;
>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>> (iv) that the debtor caused to be made or published with the intent to deceive.

■ "Exceptions to discharge must be strictly and literally construed against the creditor and liberally construed in favor of the honest debtor." *In re Spar,* 176 B.R. 321, 326 (Bankr.S.D.N.Y.1994). Each element alleged by the creditor under Code section 523(a) must be proven by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

■ The Plaintiffs' challenge pursuant to Code section 523(a)(2)(B) will be dealt with immediately. The record shows that the Plaintiffs did not rely on the contractual stipulations set out in the written contracts when extending the loans at issue. In fact, the two loans extended in 1988 were not documented until 1990. Rather, the Plaintiffs relied on the oral promises, the friendship and the long-term relationship between the parties. A challenge pursuant to Code section 523(a)(2)(B) cannot be maintained because the reliance element set out in Code section 523(a)(2)(B)(iii) has not been established for failure to show reasonable reliance on a statement in writing at the time the loans in question were made.

■ Pursuant to section 523(a)(2)(A) of the Code, the creditor must prove five elements by a preponderance of the evidence in order to preclude discharge of the debt in question:

> (1) [that] the debtor made the representations;

> (2) that at the time he knew they were false;

> (3) that he made them with the intention and purpose of deceiving the creditor;

> (4) that the creditor relied on such representations; and

> (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Spar,* 176 B.R. 321, 326 (Bankr. S.D.N.Y.1994) (quoting *In re Kirsh,* 973 F.2d 1454, 1457 (9th Cir.1992)).

■ The first and second elements require that a false statement or pretense be exhibited which the debtor either knew was false at the time or which statements were made with "reckless indifference for the truth." *Id.* at 327; *See, eg., In re McDermott,* 139 B.R. 50 (Bankr.D.R.I.1992) (the court found reckless indifference for the truth in a case where at the time that loans were extended the borrower had $100,000.00 in debt, no significant assets and an annual salary of only $30,000.00). There is no evidence pre-

sented by the Plaintiffs in this case to aid the court in making a determination as to whether the Defendants held a reckless belief that they had the ability to repay the loans at issue. We are concerned instead with determining whether Defendants knew at the time that the loans were extended that they had no intention of fully complying with the agreement either to repay the loans or to undertake certain obligations on behalf of the Plaintiffs.

■ The Court had the opportunity to listen to the testimony and evaluate the credibility and demeanor of the witnesses. In determining the credibility of the witnesses, the Court notes that during her testimony, Mrs. Braizblot did acknowledge that a certain check she insisted was made out to the Plaintiffs to repay a portion of the debt at issue was in fact clearly earmarked for repayment to Debra, Inc. for a different debt. This misrepresentation, coupled with the demeanor of the Defendants as compared to the demeanor of the Plaintiffs leads the Court to question the veracity of the Defendant's statements at the trial, including statements concerning the Defendants' intentions to repay the three loans which are at issue in this case.

■ In addition to consideration of the witnesses' veracity, the Court must also determine scienter from the totality of the circumstances. *In re Spar*, 176 B.R. at 328. "[F]raudulent intent cannot be presumed. The permissible inference will be negated where the debtor comes forward with some evidence that he did not intend to deceive the plaintiff." *Id. See, e.g., In re Gans*, 75 B.R. 474 (Bankr.S.D.N.Y.1987) (payment of interest on loan over an extended period of time was held sufficient to negate the "intent not to perform" element of a Code section 523(a)(2)(A) challenge to discharge). The circumstances in this case are however very different from those in *Gans*. In that case, the agreement only called for the payment of interest on the money invested by the plaintiff. As such, the defendant's repayment of interest over the extended period of time was in full compliance with that agreement. In this case, the Defendants never made any recognizable effort to fully comply with the agreed upon repayment schedules. In fact, the Debtors ceased making any interest payments after the debts were renegotiated in 1990, thereby demonstrating a clear lack of intent to repay the Plaintiffs on the outstanding debt.

The Court finds that a long-term agenda of deceit was maintained by the Defendants in communicating false excuses to the Plaintiffs regarding the repayment of the various loans pursuant to the oral and written agreements made between the parties. The parties had an agreement that the loans would be satisfied from proceeds received from specific orders. On a continuous basis, the Defendants falsely represented that either payment on such orders had not yet been effected or that the Defendants could not continue in business without use of these proceeds. The Defendants also failed to substantially comply with the written stipulations set out in the agreements. The Defendants took out an insurance policy in compliance with such agreements for a one year period commencing on June 17, 1989, yet let it lapse. The Plaintiffs also never received a second mortgage on the Defendants' residence. Clearly, there was no intent shown by the Defendants to repay the principal due on the loans or to provide any security to comply with the obligations promised to induce the Plaintiffs to make the loans.

■ The court also finds that the Plaintiffs "justifiably" relied on the false statements made by their good and close friends. A number of courts have found that reliance on representations made by a personal friend with whom the lender had a long term relationship is "reasonable." *In re Phillips*, 804 F.2d 930, 933 (6th Cir.1986); *In re Sobel*, 37 B.R. 780 (Bankr.E.D.N.Y.1984).

The requirement for establishing reliance in a Code section 523(a)(2)(A) challenge to discharge of a debt has recently been redefined by the Supreme Court of the United States in *Field v. Mans*, — U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In *Field v. Mans*, the Supreme Court focused on whether and the extent to which reliance was required to be proven in a non-dischargeability action under section 523(a)(2)(A) of the

Code. The Supreme Court concluded, after reviewing the language of the statute, that this subsection employed common law terms which carried certain meanings. Therefore, the Court concluded that Congress intended to adopt a common law understanding of the terms it used. To interpret the common law meaning of the statute, the Court turned to the Restatement (Second) of Torts for guidance. The Restatement requires that there be actual and justifiable, but *not* reasonable reliance on fraudulent misstatements for the plaintiff to recover. *Id.* at ——, 116 S.Ct. at 446. However, the Court did not completely eliminate the role of the reasonableness standard in determining the reliance element. The Supreme Court further explains: "[a]s for the reasonableness of reliance, our reading of the act does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about the reliance in fact." *Id.* at ——, 116 S.Ct. at 446. The *Kirsh* court, whose decision was cited by the Supreme Court in adopting this standard, explained that "[t]he court must look to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor." *Kirsh,* 973 F.2d at 1460. As other courts have held, "a long standing friendship or close personal relationship weighs heavily in favor of finding reasonable reliance." *Spar* 176 B.R. at 327. Thus, it must follow that the new subjective standard espoused by the United States Supreme Court in *Field* will encompass and extend the ability of individuals involved in long term personal and business relationships to consider the nature of such associations in determining whether or not to rely on representations made by and to each other.

 In determining whether the reliance was justifiable under the circumstances, the Supreme Court did place certain limits. For example, a person cannot rely on misrepresentations blindly, without undertaking even the slightest investigation. However, the investigation need be no more than cursory.

In this case, it is clear to the Court that the Plaintiffs justifiably relied on the representations made by their good friends, the Defendants. The Defendants used their close relationship with the Plaintiffs and played on their sympathies to induce them to loan the funds. The Defendants also made false representations to the Plaintiffs regarding the orders which were to be used to repay them, and regarding the promised second mortgage and life insurance. The Plaintiffs, as close friends, took the Defendants' statements to be true. Apparently, the Plaintiffs did not make any further inquiry regarding the second mortgage, believing that the Defendants would make good on their promise.

When the first debt came due, the Plaintiffs once again were falsely advised by the Defendants that the accounts had not arrived and that another extensions would be necessary. The Plaintiffs believed the Defendants and continued to believe them even after the original loans were re-negotiated into another promissory note. Despite their naivete, the Court finds that the Plaintiffs' reliance on their friends was justified given the close relationship between the parties. The fraud or false pretenses perpetrated by the Defendants continued at each request for an extension, including the renegotiation of the loans.

For the reasons set forth above, the Court disagrees with the Defendants' arguments regarding the alleged lack of reliance by the Plaintiffs. The Court cannot conclude that the Plaintiffs only relied on the close relationship or the statements regarding the insurance and the second mortgage. Rather, it was a continuing pattern of deceit upon which the Plaintiffs relied, commencing with the false promises to repay the loans upon receipt of receivables, which promises the Defendants never kept and further extended by the false promises to grant the Plaintiffs certain security in exchange for the loans. This deceitful pattern was aided and abetted by the close personal relationship forged between the parties, which was another causal factors in the Plaintiffs' decisions to grant the repeated extensions. The Defendants' actions must be viewed as a whole, and in the context of this relationship. It is upon this amalgam of factors that leads this Court to conclude that justifiable reliance has been

established by a preponderance of the evidence.

■ The loans at issue were a direct result of certain representations made by the Defendants to the Plaintiffs. No damages would have been sustained by Plaintiffs had the loans not been made. The lack of legal action taken by the Plaintiffs to obtain the return of the funds at issue was also the proximate result of the false representations made by the Defendants, and the justifiable belief that their close friends of many years would repay them the sums which were extended to enable them to purchase a home and continue in business to earn a livelihood for themselves.

As to the Defendants' allegations that a portion of the principal due on the loans in question had been repaid pre-petition, the Court finds that this is not the case. All of the checks which the Defendants introduced to support their allegations either specifically referred to interest payments, to payment of other loans, or pre-dated the date upon which the loans at issue were re-negotiated. Therefore, the Court concludes that no credible evidence has been proffered to indicate that the principal due on the loans to Plaintiffs had been paid. In addition, when the Debtors filed their petition, they set forth in their schedules the debt due to Plaintiffs as being without dispute and non-contingent. They scheduled a separate debt due to Debra, Inc. in the sum of $484,039.43 on behalf of NINI. The debt to Debra, Inc. will be discharged as there has been no complaint filed by Debra, Inc. to deem this debt non-dischargeable.

■ The Court notes that the most difficult dischargeability cases are those that involve related family members or those of long-time, close, good friends. In these cases, it is often observed that the plaintiffs do not perfect rights in property as against the defendants, "their friends", as they would have when dealing with strangers or third party business associates. There is a degree of trust between the parties that goes beyond the ordinary business transaction. When that trust is breached by one party, equity dictates that strict compliance with a businessman's responsibility in protecting oneself

not be demanded. Unless something more, some affirmative act by the Plaintiffs can be shown to support a lack of justifiable reliance, then mere naivete or lack of business sophistication will not be sufficient to overcome a finding of justifiable reliance on the promise of a close, good friend to repay the loan which the Defendants induced the Plaintiffs to make.

In sum, the Plaintiffs have demonstrated by a preponderance of the credible evidence that their personal loan plus accrued interest in the aggregate amount of $147,276.32 should be excepted from discharge under section 523(a)(2)(A) of the Code.

*CONCLUSION*

1. The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. sections 1334 and 153(a).

2. This is a core matter under 28 U.S.C. section 157(b)(2)(I).

3. This Court finds that the Defendants fraudulently induced the Plaintiffs to make certain loans in the aggregate amount of $147,276.32 inclusive of interest as of the petition date and that the Defendants justifiably relied on their representations. Further, the Plaintiffs justifiably relied on the Defendants' false statements to induce the Plaintiffs to extend the due dates on the loans, without the intent to repay; or in reckless disregard of their promise to pay the Plaintiffs from funds received from specific accounts that were due to them.

4. The Defendants' debt to the Plaintiffs in the amount of $147,276.32 is non-dischargeable under 11 U.S.C. section 523(a)(2)(A).

Settle an Order in accordance with this decision.