In re Clarence L. & Roxanne
RUSH, Debtors.

FIRSTTIER BANK, N.A., Plaintiff,

v.

Clarence L. & Roxanne
RUSH, Defendants.

Bankruptcy No. 91–30121–C.
Adv. No. 91–3018–C.

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

Jan. 15, 1992.

Jerry Tanzy, El Paso, Tex., for debtors.

Andrew B. Krafsur, El Paso, Tex., for plaintiff.

## ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER ON COMPLAINT TO DENY DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(C)

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the motion of Plaintiff for reconsideration of this court's order disposing of this complaint. Upon consideration thereof, the court finds and concludes that the motion should be denied.

The court agrees that actual fraud may be inferred from objective facts suggesting that the Debtor knew, or should have known, at the time the credit card is used, that the debtor was insolvent and lacked the ability to repay the charge. *In re Hinman,* 120 B.R. 1018, 1021 (Bankr. D.N.D.1990); *In re Dougherty,* 84 B.R. 653 (Bankr.9th Cir.1988); *see In re Pedrazzini,* 644 F.2d 756, 757–758 (9th Cir.1981); *In re Faulk,* 69 B.R. 743 (Bankr.N.D.Ind.1986). The court also concurs with Judge Monroe's decision in *Preece* that credit card purchases carry the implied representation that the buyer has the means and intention of repaying the charge for purposes of determining whether a debt is nondischargeable. *In re Preece,* 125 B.R. 474, 477 (Bankr.W.D.Tex.1991).

The movant argues from these cases that "[t]hough the Debtor's maintained a good faith intent to repay, this intent must be objectively reasonable in light of the Debtor's financial condition at the time the charges were incurred. Considering the state of the Debtor's financial affairs, it cannot be said that the Debtors

held a good faith intent to repay. Furthermore, the Debtors did not have the means to repay their obligations." Motion for Reconsideration at p. 3. The argument is valid so far as it goes, but the evidence does not square with the movant's view of it. At trial, the court found persuasive the debtor's testimony that she fully expected (indeed, in this court's view, had every right to believe) that her son and daughter-in-law would make the repayments on loans which the debtors had made to them to help them start up their business. It was the entirely unexpected (and cold-hearted) refusal of her daughter-in-law to repay the loans (in the neighborhood of $25,000), and her son's cowardly refusal to honor his father and mother in the face of opposition on the part of his wife, that led to such a complete reversal in the debtors' financial fortunes that they found themselves unable to repay these credit card debts. That reversal of fortune occurred *after* these credit card charges were incurred.

Under these facts, the court is comfortable with its original conclusion that the debtors here did indeed hold an objectively reasonable intention to repay these credit card charges sufficient to withstand the holding in *Preece*. The court hastens to emphasize that these are unusual facts indeed. In the usual case, a debtor will be hard-pressed to withstand an objection to discharge of such credit card debts.[1]

The motion to reconsider is DENIED.

So ORDERED.

---

1. The debtors here charged over $1,200 on their FirstTier account to obtain a cash advance which was used to pay down (but not pay off) other credit charges for which the interest charges and amount of payments per month were higher than the FirstTier charges and payment terms. Mrs. Rush testified that the charge was intentionally incurred to improve the debtors' cash flow situation, by reducing the net monthly charges they owed.