**In re Paul K. DOUGHERTY, Debtor.**

**MANUFACTURERS HANOVER TRUST, Plaintiff,**

v.

**Paul K. DOUGHERTY, Defendant.**

**Bankruptcy No. 890–83856–478.
Adv. No. 891–8087–478.**

United States Bankruptcy Court,
E.D. New York.

July 27, 1992.

---

Paul K. Dougherty, pro se.

Martin J. Murphy, Jericho, N.Y., for plaintiff Chemical Bank.

### DECISION PURSUANT TO SECTION 523(a)(2)(A)—NON–DISCHARGEABILITY

DOROTHY EISENBERG, Bankruptcy Judge.

This is an adversary proceeding in which Manufacturers Hanover Trust seeks a determination of the dischargeability of debt owing to it by the chapter seven pro se Debtor, Paul K. Dougherty, under section 523(a)(2)(A). For the following reasons, the debt is discharged.

### FACTS

The debtor, Dougherty, filed his petition for bankruptcy relief on January 2, 1991, listing total debts of $70,180. He had been employed in an executive position until November 27, 1990 earning an annual salary of $67,000 and anticipated a bonus of a minimum of approximately $20,000 based on a written agreement with his employer. In addition, the debtor had a basis to believe he would eventually have an equity position in the company. The debtor's financial difficulties began in March of 1990 at the time of his divorce. He began using credit cards to help fund his expenses which were exceeding his income; in total he charged approximately $40,000 on his various credit cards. The plaintiff, Manufacturers Hanover Trust, suffered a loss as a result of the debtor's use of two of its credit cards in the amount of $5,166.19. Approximately $2000 was charged in May, and $3000 in July, almost entirely as cash advances. The proceeds of the debtor's charges were primarily used to pay for child support, mortgage and taxes pursuant to his divorce agreement and for his son's college tuition expense. The debtor left his employment on or about November, 1990. Until the filing of the petition, the Debtor had always made the minimum payments required on the credit cards and had not "defaulted" on these required payments. In fact, the debtor was current on all his credit cards until he became unemployed.

### DISCUSSION

In pertinent part, Section 523(a)(2) states:

(a) A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; ...

11 U.S.C. Sec. 523(a)(2)(A) and (C) (1992). For debts which do not fall within subparagraph (C) to be deemed nondischargeable, a plaintiff must prove its case by a preponderance of the evidence. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). The evidence must prove that:

(1) the debtor made a false representation;

(2) the debtor made the false representation with the purpose and intention of deceiving the creditor;

(3) the creditor reasonably relied on the representation;

(4) the creditors sustained a loss as a result of the representation.

*In re Tesmetges*, 74 B.R. 911, 914 (Bankr. E.D.N.Y.1987), *aff'd*, 86 B.R. 21 (E.D.N.Y. 1988), *aff'd*, 862 F.2d 304 (2d Cir.1988); *In re Austin*, 132 B.R. 1, 3 (Bankr.E.D.N.Y. 1991). Since a credit card issuer's reliance and loss are relatively easy to prove, cases generally concentrate on the representations made by the debtor and if there was an intent to deceive. Proof that the debtor's representations were false and that they were made with the intent and purpose to deceive are more difficult to prove because of the element of subjective intent.

A majority of courts find that using a credit card is an implied representation to the issuer that the debtor has *both* the intention *and* ability to repay the debt and that the credit card issuer relies on those implied representations. *In re Union Bank of the Middle East, Ltd.*, 127 B.R. 514, 519 (E.D.N.Y.1991); *Matter of Stewart*, 91 B.R. 489, 494 (Bankr.S.D.Iowa 1988).

Most Section 523(a)(2)(A) credit card cases concentrate exclusively on the debtor's *intent* to repay, as opposed to an *ability* to repay. Objective factors are used to infer the subjective intent of the debtor since a debtor will rarely admit to his own fraudulent acts. *In re Calder*, 907 F.2d 953, 955–956 (10th Cir.1990). In making a determination, courts consider the following:

1. The length of time between the charges and the filing of bankruptcy;

2. Whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges;

4. The amount of the charges;

5. The financial condition of the debtor when charges were made;

6. Whether the charges exceeded the credit limit of the account of the account;

7. Whether there were multiple charges on the same day;

8. Whether the debtor was employed;

9. The financial sophistication of the debtor

10. Whether the debtor's spending habits suddenly changed;

11. Whether the purchases were made for luxuries or necessities.

*In re Rodriguez*, 138 B.R. 112, 114 (Bankr. S.D.Fla.1992); *In re Hinman*, 120 B.R. 1018, 1021 (Bankr.D.N.D.1990). A predominance of these objective factors alone, however, does not always create a conclusive presumption. *In re Cirineo*, 110 B.R. 754, 759 (Bankr.E.D.Pa.1990).

Far fewer Section 523(a)(2)(A) credit card cases concentrate on a debtor's ability to repay. In those that do, most courts look to the ability to repay as additional objective evidence to infer the debtor's true subjective intent. *Matter of Boydston*, 520 F.2d 1098, 1101 (5th Cir.1975) (where hopeless insolvency at the time of the purchase makes repayment impossible, fraudulent intent may be inferred); *In re Hinman*, 120 B.R. 1018, 1022 (Bankr.D.N.D.1990) (where the court found the debtor made false representations as to his ability to repay with the intention to deceive because he charged twenty-six times his disposable income for luxury items in the month prior to his filing).

Some courts have stated that an intent to deceive may be inferred from objective factors suggesting that the debtor *should have known* at the time of card use that he/she lacked the ability to repay. *In re Kurali*, 132 B.R. 468, 469 (Bankr.M.D.Fla. 1991); *Matter of Buford*, 25 B.R. 477, 481 (Bankr.S.D.N.Y.1982). For example, in *In re Preece*, 125 B.R. 474 (Bankr.W.D.Texas

1991), the court stated it was convinced that at the time cash advances in question were obtained by the debtor he had an intention to repay the advances. However, this was not enough. The court wrote that it "must also determine whether that intention can be viewed as one which was held in good faith in view of the debtor's ability to repay at the time in question. The debtor cannot ignore the reality of his financial situation and still maintain that he has a 'good faith intent' to repay." *Id.* at 478. *See also, In re Rush,* 136 B.R. 999 (Bankr. W.D.Tex.1992).

■ Although intent may be inferred where the debtor knew or should have known that repayment of the debt was impossible, courts have recognized "that misconceived optimism is not uncommon to the financially distressed." *Id.* at 482; *Matter of Stewart,* 91 B.R. 489, 495 (Bankr.S.D.Iowa 1988). The Code was designed to protect debtors by providing a fresh start to those who are honest, but unable to repay their debts. *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). There are many honest debtors who push their fragile financial situations into insolvency before they realize it. *Matter of Stewart,* 91 B.R. 489, 500 (Bankr.S.D.Iowa 1988). Therefore, all courts agree that credit card usage by a debtor whose obligations exceed income does not, per se, sustain non-dischargeability. *See e.g., Matter of Buford,* 25 B.R. 477, 478 (Bankr.S.D.N.Y.1982). If insolvency is to be used to draw such an inference, it must be hopeless insolvency sufficient to rebut any possibility of good faith. *Georgia Bank & Trust Co. v. McKinney,* 18 B.R. 607, 611 (Bankr. M.D.Ga.1982).

■ In the instant case, there is agreement that the creditor reasonably relied on the representation and sustained a loss as a result of the representation. What must be decided is if there is sufficient evidence to prove that the debtor made a false representation with the purpose and intention of deceiving the creditor.

Based on the objective factors to be considered, this Court finds that the debtor had the requisite *intent* to repay. The extensions of credit at issue were not taken on the eve of bankruptcy. $1936.30 was charged on the first credit card between May 3, 1990 and May 13, 1990, almost entirely as cash advances; on the second credit card, $3000.00 was charged between July 7, 1990 and July 17, 1990, $80.00 on August 30, 1990, and $150.00 on November 2, 1990, all of which were cash advances. The bankruptcy filing did not occur until January 2, 1991. The debtor was experiencing financial problems since his divorce and took numerous cash advances on these and other credit cards, but was employed and was paying the debts pursuant to the arrangement between him and the financial institutions. The debtor never exceeded his credit limits. Furthermore, the advances were not used to purchase luxury items, but to pay mortgage, taxes, and child support payments pursuant to a divorce agreement and tuition payments for his son who was attending college.

Although the debtor was accumulating debt at an excessive rate and had listed expenses on his schedules that significantly exceeded income, his total debts amounted to $70,180.00 with an anticipated annual income of $90,000.00 including bonus. Unfortunately, this relation of debt to income is not so rare in this country.

Even though the debtor was financing his expenses in part through the use of his credit cards, it is only conjecture to conclude that he would not have been able to continue managing his finances without a continuous increase in available credit, as the plaintiff suggests. It is possible that the debtor could have reduced his expense and paid all his credit card debt had he not become unemployed. The debtor's anticipated net income at the time of the instant charges was averaging approximately $5000 per month including an expected annual bonus. Based on testimony and the debtor's schedules, he was obligated to pay $1500 in required support payments, and since he was living rent free, had less than $500 in personal expenses. The remaining funds were used to pay for college tuition and debt repayment. It was not an abso-

lute necessity that the debtor pay for his child's remaining college education. Nor was it necessarily impossible for the debtor to arrange his debts in a way to make payment easier with longer payout terms and a lower average rate of interest, either with some of his present creditors or from consolidating the debts through another source. In addition, at the time of the advance at issue, the debtor had good reason to believe that his income would increase in the future because the new company he was managing was doing well.

### CONCLUSION

In conclusion, the plaintiff has not presented to this Court a preponderance of evidence to support the allegations pursuant to Section 523(a)(2)(A) at the time the charges were incurred. The debtor may have been overly optimistic about his ability to repay but there is no evidence of an intent not to repay his debts, nor is there sufficient evidence to support a finding of such hopeless inability to repay as would rise to the level of intent to defraud. The facts in this case indicate that the scale of justice is weighted in debtor's favor. The debtor will be discharged of this debt.

SUBMIT an Order in conformity with this decision.