**In re Gregory E. BERHOW and Mary·Ann Berhow, Debtors.**

**FIRST DEPOSIT NATIONAL BANK, Plaintiff,**

v.

**Gregory E. BERHOW and Mary Ann Berhow, Defendants.**

**Bankruptcy No. 94–03630–8P7.**

**Adv. No. 94–436.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 1, 1995.

Scott W. Spradley, Orlando, FL, for plaintiff.

Andrew S. Forman, Tampa, FL, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matter under consideration is the dischargeability vel non of the debt admittedly due and owing by Gregory E. Berhow and his wife, Mary Ann Berhow (Debtors) in the amount of $5,767.82. The claim of nondischargeability is asserted by First Deposit National Bank (Bank) who contends that the obligation should be excepted from the overall protective provisions of the general bankruptcy discharge because the Debtors obtained credit when they had no intent to repay the same or they knew they lacked the ability to repay the obligation. Thus, according to the bank, this debt is nondischargeable by virtue of § 523(a)(2)(A) of the Bankruptcy Code. In addition, the bank also seeks the award of reasonable fees and costs based on *Transouth Financial Corp. of Florida v. Johnson,* 931 F.2d 1505 (11th Cir.1991). The facts established at the final evidentiary hearing relevant to the matter under consideration are as follows:

The Debtor, Mary Ann Berhow (Mrs. Berhow), was at the time relevant employed by the Hillsborough County Sheriff's Department as a customer service officer. She earned $11,573.00 in wages from her employment in 1993. Mrs. Berhow also received, and continues to receive, $800.00 per month in child support for her three children. This is the only non-employment income reported for either of the debtors. Her husband, Gregory E. Berhow (Mr. Berhow), is employed by Hillsborough County Animal Services as an Animal Control Coordinator and earned $20,259.82 in wages in 1993.

In June or July of 1993, Mrs. Berhow received an invitation to apply for a Visa Gold card issued by the Bank which also required that she also request a cash advance upon issuance. She returned the application with a request for a cash advance in the amount $4,000, and in July, 1993, she received from the bank a Visa Gold card in the joint names of both the debtors with a limit of $5,000 along with a cash advance check for the requested $4,000. This cash advance was deposited in the debtors household account. It is undisputed that the debtors continued to use the credit card, and during the first statement period ending in August, 1993, the debtors charged an additional $967.19 for household expenses. The first minimum payment of $140.61 was due on September 3, 1993 and was timely made. During the next statement period ended September 9, 1993, the debtors charged $33.14 and cash advanced an additional $70.00, which brought the account over its $5,000 credit limit and required a new minimum payment of $200.75 due by October 4, 1993. This payment was also made, and was received by the bank on October 7. The final charge to the account was a $30 cash advance on October 12, 1993. No further charges or payments were made to the account, and the balance as of May, 1994, was $5,767.82.

According to Schedule I, the Debtors have combined monthly disposable income of $3,348.01 with which to pay $3,250.00 in fixed monthly expenses. This left the debtors a cash flow surplus of almost $100. However, this expense figure does not include the minimum payments on the $29,508.08 balance

that the debtors were carrying on eight credit cards. The bulk of this debt was incurred by the Debtors prior to the time they incurred the debt owed to the Bank. Thus, it is without dispute that the debtors had significant negative cash flow both before and after the debt was incurred to the Bank.

In November of 1993, the debtors sought the advice of an attorney and discontinued all credit card payment although they did not file their Petition for Relief under Chapter 7 of the Bankruptcy Code until April 14, 1994.

Based on these facts, it is the contention of the Bank that the balance owed by these debtors should be excepted from the overall provision of the general bankruptcy discharge based on § 523(a)(2)(A) of the Bankruptcy Code which provides in pertinent part as follows:

§ 523. Exceptions to Discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

■ The burden of establishing a claim of nondischargeability is on the party who seeks such a determination. The burden of proof is no longer the clear and convincing standard, but merely the preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To establish a viable claim under § 523(a)(2)(A) for abuse of the privilege granted to a credit card holder, there must be competent proof that either the card holder used the credit card knowing that he had no intention to ever repay the debt, or knowing that he will not be capable to meet the obligations incurred through the use of the card. *In re Stokes*, 155 B.R. 785 (Bankr.M.D.Fla.1993).

The classic example of the first proposition is when the debtor consults an attorney for the purpose of filing bankruptcy and then makes charges on the credit card before

filing bankruptcy. In the second scenario, the debtor's income is either nonexistent or insufficient to meet his other fixed monthly obligations and he has no realistic basis to anticipate a substantial increase in his income in the near future.

The Bank contends that the Debtors were hopelessly insolvent at the time when they used the card issued by the Bank and that they either had no intention to repay the Bank, or that they knew they were incapable of meeting the obligations including the debt owed to the Bank.

The debtors concede, as they must, that their combined income at the time the Bank's debt was incurred was insufficient to cover their monthly fixed expenses and to meet the minimum monthly payments required by the card agreement. However, in their defense the debtors contend that they intended to repay these obligations from increased income from their raises and promotions. Unfortunately, the anticipated increase of their income did not occur because Mr. Berhow was delayed by 11 months in receiving a $3.00 per hour raise which he had been promised, and Mrs. Berhow did not receive the position and raise for which she applied.

The defense asserted does not bear close analysis. Even assuming that Mr. Berhow received his raise when originally promised, a realistic assessment of the debtor's entire financial picture should have left them with a realization that they could not live up to the new credit card obligation from the Bank. This is so because the debtors still would have negative cash flow based on minimum credit card payments required under the several credit card obligations. Mr. Berhow's $3.00 per hour raise would only supply roughly $480.00 per month, before taxes, in additional funds to service debt. Based on the debtor's $29,508.08 in total credit card debt, the typical minimum payments on these cards plus the debtor's other fixed expenses would far exceed even the anticipated elevated earnings. Based on the foregoing, this Court is satisfied that the record warrants the conclusion that the debtors obtained monies and property through the use of the credit card by fraud and, therefore, the out-

standing liability to the Bank shall be excepted from the general bankruptcy discharge.

There was nothing presented in support of the claim of nondischargeability against Mr. Berhow and at the conclusion of the presentation of the claim, this Court announced that the claim of nondischargeability will be dismissed against the husband, Mr. Berhow. A separate final judgement will be entered in accordance with the foregoing.

DONE AND ORDERED.