**In re Robert D. CHOI, Pong S. Yu, Chapter 7 Debtors.**

**AMERICAN EXPRESS CENTURION BANK OPTIMA, Plaintiff,**

**v.**

**Robert D. CHOI, Defendant.**

Bankruptcy No. 95–14216–AT.
Adv. No. 95–1529–AT.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Oct. 29, 1996.

Dominique S. Sinesi, Henry & Henry, P.C., Fairfax, Virginia, for Plaintiff.

Richard A. Bartl, Alexandria, Virginia, for Debtors/Defendant.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial on plaintiff's complaint to except a credit card debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) was held on October 2, 1996. At the conclusion of trial the court announced findings of fact and conclusions of law, ruling that judgment would be entered for the plaintiff.

This opinion supplements the court's bench ruling on the issue of debtor's intent to defraud.

### Facts

Debtor defendant opened a credit card account with plaintiff in July 1986. Prior to filing this bankruptcy case debtor used his American Express charge card to borrow cash as follows:

| | |
|---|---|
| July 17, 1995 | $1,000.00 |
| July 19, 1995 | $6,500.00 |
| July 31, 1995 | $ 300.00 |
| | $7,800.00 |

The $6,500.00 charge on July 19, 1995, was to enable debtor to make a payment toward an indebtedness to his employer.

Debtor made only one payment on the account after the charges and prior to filing this joint chapter 7 bankruptcy case on September 25, 1995. He is presently indebted to plaintiff in the amount of $8,036.77 plus costs and attorney fees as provided by the credit card agreement. Debtor has admitted he did not have the ability to pay these charges at the time they were incurred and that his use of the charge card represented an implied ability to repay the charges.

At one time debtor had a carry-out business which he lost in 1994. According to the bankruptcy petition and schedules of debtor and his wife, they had income of $40,000.00 for the year 1993, $7,000.00 in 1994 and $5,000.00 in 1995 up to the date he filed bankruptcy. At the time he filed the peti-

tion, debtor earned $1,500.00 (gross) per month, and his wife was unemployed.

In 1995, debtor suffered gambling losses in the amount of $10,000.00.

Debtor's bankruptcy schedules reflect unsecured debt in the total amount of $98,-864.00, of which the sum of $83,864.00 is credit card debt.

### Discussion And Conclusions

■ Plaintiff asserts that debtor fraudulently used his credit card in three cash transactions shortly prior to filing bankruptcy and that the resulting debt of $8,036.77 should be excepted from discharge under Bankruptcy Code § 523(a)(2)(A).[1] The plaintiff thus bears the burden of proof by a preponderance of the evidence to establish the following common law elements of fraud:

(1) that the debtor made misrepresentation or committed other fraud;

(2) that at the time the debtor knew the conduct was fraudulent;

(3) that the debtor's conduct was with the *intention and purpose* of deceiving or defrauding the creditor;

(4) that the creditor relied on the debtor's representations or other fraud; and

(5) that the creditor sustained loss and damage as the proximate result of the representations of fraud.

*Western Union Corp. v. Ketaner (In re Ketaner)*, 154 B.R. 459, 464–65 (Bankr.E.D.Va. 1992) (emphasis in original).

The court ruled from the bench at the conclusion of trial that judgment would be entered for the plaintiff. This opinion is limited to a discussion of the court's basis for ruling that debtor intended to defraud the plaintiff in his use of a credit card.

Credit card fraud cases in bankruptcy are somewhat of an anomaly, and bankruptcy courts have adjusted their analysis of the usual fraud elements to accommodate the special nature of a credit card transaction. *Colonial Nat'l Bank USA v. Leventhal (In re*

---

1. Section 523(a)(2)(A) excepts from a debtor's chapter 7 discharge in bankruptcy debts—

   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

   .    .    .    .    .

   11 U.S.C. § 523(a)(2)(A).

*Leventhal),* 194 B.R. 26, 28–29 (Bankr. S.D.N.Y.1996); *Bank of Va. v. Davis (In re Davis),* 42 B.R. 611, 613 (Bankr.E.D.Va. 1984).

Although various approaches have been used, many courts have held that the debtor's use of a credit card presents an implied representation that the debtor has both the ability and the intention to pay the charges and that the card issuer relies upon those implied representations in extending credit. *See Manufacturers Hanover Trust v. Dougherty (In re Dougherty),* 143 B.R. 23, 25 (Bankr.E.D.N.Y.1992); *Davis,* 42 B.R. at 613. However, the implications of a debtor's use of a credit card presents one of those bankruptcy issues on which a court can find a published opinion to support almost any position one wishes to adopt. *See, e.g., Anastas v. American Sav. Bank (In re Anastas),* 94 F.3d 1280, 1285–86 (9th Cir.1996) (explaining with some emphasis why a debtor's use of a credit card is a representation of intent to repay but not of an ability to repay).

The peculiarity of the credit card transaction makes it particularly difficult, in my experience, for the creditor to carry its burden in the § 523(a)(2)(A) context to prove that the debtor intended to defraud at the time of the card use, i.e., did not intend to pay the charge. *Anastas,* 94 F.3d at 1285. Invariably the debtor testifies at trial that he or she intended at the time to pay the charge. And as in other fraud cases the court must resolve the intent issue on the basis of all surrounding circumstances. What may set the credit card case apart is that in many, if not most, instances, debtors probably *do* intend to pay the charges they make.

Given that a debtor may have subjectively intended to pay a credit card charge, albeit with unwarranted optimism, bankruptcy courts have typically analyzed the surrounding circumstances by considering a number of evidentiary factors.[2] Although these factors may be useful, I have found that their presence or absence rarely provides a simple solution to the issue of a debtor's fraudulent intent. Each case has its own set of circumstances which the court must weigh. This of course includes the credibility or plausibility of the debtor's testimony.

Courts in this district have usually applied a good faith type of test and considered whether a debtor was hopelessly insolvent and therefore *should* have known that he or she would be unable to pay credit card charges when they came due. *See Dougherty,* 143 B.R. at 26. Of course, difficulty may lie in the determination of hopeless insolvency. Financially distressed debtors often prevail in these cases by demonstrating with at least some rational justification a belief that a charge would be paid.

The good faith or "reasonable person" approach to the fraudulent intent issue has been recognized in a number of opinions. *See First Deposit Nat'l Bank v. Berhow (In re Berhow),* 178 B.R. 865 (Bankr.M.D.Fla. 1995); *Dougherty,* 143 B.R. at 25–26; *First-tier Bank, N.A. v. Rush (In re Rush),* 136 B.R. 999 (Bankr.W.D.Tex.1992); *Corestates Bank of Del., N.A. v. Kurali (In re Kurali),* 132 B.R. 468, 469 (Bankr.M.D.Fla.1991).[3]

**2.** These factors include:
 1. The time between the charges and bankruptcy;
 2. Whether debtor had consulted a bankruptcy attorney before the charges were made;
 3. The number and amount of charges;
 4. Debtor's financial condition when charges were made;
 5. Whether debtor's charges exceeded the credit limit;
 6. Whether multiple charges made on the same day;
 7. Whether debtor employed and salary earned;
 8. Debtor's financial sophistication;
 9. Whether there was a change in the debtor's spending habits;

 10. Whether debtor made purchases for luxuries or necessities.
 *Dougherty,* 143 B.R. at 25. The use of these factors is criticized in *Chase Manhattan Bank v. Murphy (In re Murphy),* 190 B.R. 327, 333–34 (Bankr.N.D.Ill.1995).

**3.** This credit card fraud analysis is somewhat comparable to that in the "reckless disregard" cases in which a fraudulent intent may be based upon a finding that a debtor made representations based upon a "reckless disregard for truth." *Visotsky v. Woolley (In re Woolley),* 145 B.R. 830, 834–35 (Bankr.E.D.Va.1991), *appeal dismissed,* No. 3:91 Civ. 301 (E.D.Va. Aug. 18, 1992).

At trial debtor's counsel urged this court to rule in debtor's favor on the intent issue based upon debtor's testimony that he had fully intended to repay the charges. Counsel's argument relied upon the decision in *Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327 (Bankr.N.D.Ill.1995), in which Judge Barliant held in favor of a credit card debtor based predominately upon the debtor's "honest [belief] that he would be able to pay his debts." 190 B.R. at 334. See also *Anastas*, 94 F.3d at 1287. The *Murphy* opinion presents an enlightened discussion of the issue which challenges some conventional notions of credit card fraud, as for example the court's dismissal of the lists of evidentiary factors cited in so many opinions and in the apparent rejection of the reasonable person test. 190 B.R. at 333–34.

The Restatement of Torts, cited in *Murphy*, states as follows:

> The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have recognized as false is not enough to impose liability upon the maker for a fraudulent misrepresentation under the rule stated in this Section, but it is evidence from which his lack of honest belief may be inferred. So, too, it is a matter to be taken into account in determining the credibility of the defendant if he testifies that he believed his representation to be true. . . .

Restatement (Second) of Torts § 526 cmt. d (1976).

■ From the Restatement comment, it seems that whether the court accepts or rejects the reasonable person test may be a question of semantics. Under the rule as stated, the fact that a person of ordinary care and intelligence (the reasonable person) would have recognized a representation as false may be relied upon as evidence of fraud, and it also may bear on the debtor's credibility as a witness.

■ In my view, the debtor's testimony of having a subjective intent to repay is entitled to substantial weight, but it still must be considered in light of all other evidence in the case. If a debtor's financial condition, viewed in its entirety at the time of a credit card charge, presents a hopeless inability to pay, of which the debtor was aware, this is evidence of a fraudulent intent. And when these circumstances are present, I find it difficult to side with a debtor who subjectively but irrationally intended to pay.

■ Finally, the evidence in this case reveals that debtor was hopelessly insolvent when he made the charges in question. His bankruptcy schedules reveal that in 1995, he had earned $5,000.00 up to date of filing on September 25 and that his wife had no income up to that time; debtor's gross wages per month were then $1,500.00. Debtor drew cash of $7,800.00 from his American Express credit card in July, just over two months prior to filing bankruptcy. From these charges, $6,500.00 was used by debtor to pay on a debt to his employer. Exclusive of the credit card charges, debtor owed in excess of $90,000.00 when he filed his chapter 7 petition. In pretrial discovery debtor had admitted that he did not have the ability to pay at the time of the charges. At trial, although he testified that he had intended to repay the charges, he was unable to provide evidence of any rational basis to support his stated intent. Thus debtor offered virtually nothing to refute plaintiff's evidence that his financial circumstances presented a situation of hopeless inability to pay.

In summary, the circumstances lead the court to conclude that debtor had no present intent to pay at the time the charges were incurred. A separate order will be entered excepting the charges from debtor's discharge.