324 B.R. 181 (2004)
In re Rodrigo A. MACIAS, Debtor.
Fleet Credit Card Services, L.P., Plaintiff,
v.
Rodrigo A. Macias, Defendant.
Bankruptcy No. 04-11265-ESS, Adversary No. 04-01222-ESS.
United States Bankruptcy Court, E.D. New York.
December 28, 2004.
*182 *183 *184 Pamela A. Hulnick, Law Offices of Pamela A. Hulnick, Teaneck, NJ, for Fleet Credit Card Services, L.P.
MEMORANDUM DECISION GRANTING THE MOTION OF FLEET CREDIT CARD SERVICES, L.P. FOR DEFAULT JUDGMENT
ELIZABETH S. STONG, Bankruptcy Judge.
Before the Court is the motion for default judgment (the "Motion") of Fleet Credit Card Services, L.P. ("Fleet") in the above-captioned adversary proceeding (the "Adversary Proceeding"). Fleet filed a complaint (the "Complaint") commencing this Adversary Proceeding against the debtor, Rodrigo A. Macias (the "Defendant"), on April 26, 2004. The Complaint seeks a finding that certain credit card debt owed to Fleet by the Defendant is nondischargeable under 11 U.S.C. § 523(a)(2)(A), on grounds that the Defendant obtained the extension of credit through fraud, false pretenses, and false *185 representations. Fleet also seeks a judgment in the amount of $5,339.53 plus interest, attorneys' fees, and costs.
Pre-trial conferences in this Adversary Proceeding were held on June 14, 2004, and September 7, 2004, at which Fleet, by counsel, appeared and was heard. Fleet filed this Motion on August 13, 2004, and a hearing was held on this Motion on September 7, 2004 (the "Hearing"), at which Fleet, by counsel, appeared and was heard. The Defendant did not appear at the pre-trial conferences, respond to the Complaint, or oppose the Motion. After consideration of the record and the relevant factors, the Motion is granted as set forth below.

Jurisdiction
The Court has jurisdiction to hear this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(I). The following are the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Background
The Defendant filed a petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on January 29, 2004 (the "Petition Date"). The Petition shows that the Defendant has a monthly income from unemployment benefits of $1,580, and monthly expenses of $1,866. Petition, Schedules I and J. The Petition also shows that the Defendant had an annual income of $55,000 in 2001, $59,000 in 2002, and income of $40,000 in 2003 until he became unemployed. Statement of Financial Affairs, Item 1. The Defendant lists $39,900, in unsecured nonpriority debt, of which $9,500 is owed to Fleet in connection with the account at issue. Petition, Schedule F.
Fleet asserts, and the record reflects, that in fourteen days, between November 13, 2003, and November 26, 2003, the Defendant made seventeen charges on his account. Complaint, ¶ 9. These charges include credit card charges on November 13, 2003, at Dry Harbor Service Station in the amount of $577.83 and Modell's in the amount of $33.85; on November 14, 2003, at P.C. Richard and Son in the amount of $195.49, Ah Chihuahua Restaurant in the amount of $26, and Thomas A. Law, M.D., in the amount of $1,000; on November 17, 2003, at CVS in the amount of $39.13; on November 18, 2003, at Ticketmaster in the amount of $129.95; on November 19, 2003, at TGI Fridays in the amount of $66.32; on November 20, 2003, at Spadium in the amount of $130; on November 22, 2003, at Key Food in the amount of $39.51, Focal Point Optical in the amount of $125, and again at Focal Point Optical in the amount of $175; on November 23, 2003, at College Point in the amount of $19.50 and The Home Depot in the amount of $15.75; on November 24, 2003, at Tamago in the amount of $729.40 and Holy Basil in the amount of $37; and on November 26, 2003, at Thomas A. Law, M.D., in the amount of $2,000. Complaint, ¶ 9; Motion, Exh. A (credit card statement for December 15, 2003, closing date).
The Defendant's account statement for the period ending January 15, 2004, shows that he did not make a payment in that period. Motion, Exh. A (credit card statement for January 15, 2004, closing date). The Defendant's account statement for the period ending December 15, 2003, shows that he made one payment of $200 on November 24, 2003. Motion, Exh. A (credit card statement for December 15, 2003, closing date).
Fleet asserts that these amounts are nondischargeable because "the merchandise charges and services . . . were obtained *186 through false pretenses, a false representation, or actual fraud by the Defendant at the time that the merchandise charges and services were incurred." Complaint, ¶ 12. Fleet argues that "the merchandise charges and services . . . were incurred by the Defendant without the intent to repay the balance at the time that the merchandise charges and services were incurred," and also that "the merchandise charges and services . . . were incurred by the Defendant without the ability to repay the merchandise charges and services at the time that the merchandise charges and services were incurred." Complaint, ¶¶ 10, 11. For these reasons, Fleet argues that it is entitled to a finding that these charges are not dischargeable, and a judgment in the amount of $5,339.53, plus interest, attorneys' fees, and costs.

Discussion
A. The Standard for Default Judgment
In this Circuit, "a debtor named as defendant in an adversary proceeding in his own bankruptcy case is always deemed to have `appeared' in the adversary proceeding so as to require notice of a motion for a default judgment." Batstone v. Emmerling (In re Emmerling), 223 B.R. 860, 867 (2nd Cir. BAP 1997). A default occurs if the defendant does not respond to the complaint within thirty days after the issuance of the summons. See Fed. R. Bankr.P. 7012(a). Here, the summons was issued on April 27, 2004, and the Defendant, who was represented by counsel in his bankruptcy case, has not responded. Docket Entry 2. Therefore, under Bankruptcy Rule 7055, Fleet may move for a default judgment. See Nickolas v. Boccio (In re Boccio), 281 B.R. 171, 174 (Bankr.E.D.N.Y.2002).
The Defendant's failure to respond to the Complaint does not, standing alone, entitle Fleet to judgment. At the outset, the court must determine "`whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Smith v. Household Fin. Realty Corp. of N.Y. (In re Smith), 262 B.R. 594, 597 (Bankr.E.D.N.Y.2001) (quoting C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2688 at 280-81, 282 (1998)). Next, the court must "[accept] as true all of the factual allegations of the complaint, except those relating to damages," and draw "all reasonable inferences from the evidence offered." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.1981). And where the claim sounds in fraud, the court must evaluate the evidence presented to assure that the plaintiff has presented a prima facie case. American Express Centurion Bank v. Truong (In re Truong), 271 B.R. 738, 742 (Bankr.D.Conn.2002). "[T]o satisfy the requirements of the prima facie case the plaintiff must present evidence from which a factfinder could reasonably find every element that the plaintiff must ultimately prove to prevail in the action." Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir.1997) (en banc), cert. denied, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).
B. Establishing Nondischargeability Under Section 523(a)(2)(A)
Section 523 of the Bankruptcy Codes provides:
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt - . . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.
*187 11 U.S.C. § 523(a)(2)(A). Here, the Complaint plainly states a "legitimate cause of action" as to the dischargeability of the charges at issue. See Universal Bank, N.A. v. Owen (In re Owen), 234 B.R. 857, 859 (Bankr.D.Conn.1999).
Exceptions to discharge under Section 523 are construed narrowly and in favor of the debtor, in order to give effect to the Bankruptcy Code's objective of providing "the debtor `a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" Cazenovia College v. Renshaw (In re Renshaw), 222 F.3d 82, 86 (2d Cir.2000) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). See 4 COLLIER ON BANKRUPTCY ¶ 523.05 (15th ed. rev.2004). The creditor bears the burden of proof by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Five elements must be established: first, that the debtor made a false representation; second, that the debtor knew the representation was false at the time it was made; third, that the debtor made the false representation with the intent to deceive the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained a loss that was proximately caused by the false representation. Chase Manhattan Bank, USA, N.A. v. Giuffrida (In re Giuffrida), 302 B.R. 119, 123 (Bankr.E.D.N.Y.2003). Where the debtor has defaulted, the creditor must make out a prima facie case as to each element in order to be entitled to relief. Accordingly, the Court will consider the elements in turn.
1. Whether the debtor made a false representation
The first element that must be established is whether the debtor made a false representation to the creditor. In re Giuffrida, 302 B.R. at 123. Fleet argues that by using his credit card, the Defendant promised to repay the obligation incurred and impliedly represented that he had both the intent and the ability to do so.
As many courts, including this Court, have held, by using a credit card, the credit card holder impliedly represents to the issuing bank that he or she has the present intent to repay the debt incurred. See In re Giuffrida, 302 B.R. at 125; Colonial Nat'l Bank USA v. Leventhal (In re Leventhal), 194 B.R. 26, 30 (Bankr.S.D.N.Y.1996); F.C.C. Nat'l Bank v. Cacciatore (In re Cacciatore), 1998 WL 412644, at *1 (E.D.N.Y.1998); Citicorp Nat'l Credit & Mortgage Serv. for Citibank, N.A. v. Welch (In re Welch), 208 B.R. 107, 110 (S.D.N.Y.1997); Bank of America v. Jarczyk (In re Jarczyk), 268 B.R. 17, 21 (W.D.N.Y.2001); AT&T Universal Card Serv. v. Mercer (In re Mercer), 246 F.3d 391, 404 (5th Cir.2001); Rembert v. AT & T Universal Card Serv. (In re Rembert), 141 F.3d 277, 281 (6th Cir.), cert. denied, 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998); Anastas v. American Savings Bank (In re Anastas), 94 F.3d 1280, 1285 (9th Cir.1996); see also Citibank (South Dakota), N.A. v. Olwan (In re Olwan), 312 B.R. 476, 483 (Bankr.E.D.N.Y.2004); Citibank (South Dakota), N.A. v. Spradley (In re Johnson), 313 B.R. 119, 128 (Bankr.E.D.N.Y.2004).
But the same is not true as to the ability to repay the debt. As many courts, including this Court, have held, by using a credit card, the credit card holder does not necessarily represent that he or she has the present ability to repay the debt incurred. See In re Anastas, 94 F.3d at 1285; In re Giuffrida, 302 B.R. at 125; In re Jarczyk, 268 B.R. at 23; MBNA Am. v. *188 Parkhurst (In re Parkhurst), 202 B.R. 816, 822 (Bankr.N.D.N.Y.1996); In re Leventhal, 194 B.R. at 30; see also In re Olwan, 312 B.R. at 483; In re Johnson, 313 B.R. at 128. But see First Card Serv., Inc. v. Flynn (In re Flynn), 184 B.R. 8, 9 (Bankr.E.D.N.Y.1995).
Here, the record shows that Fleet has alleged facts sufficient to support a prima facie case that the Defendant made representations as to his intent to repay that proved to be false. It does not, without more, support an inference that the Defendant made representations as to his ability to repay that proved to be false.
2. Whether the debtor knew the representation was false at the time it was made
The second element that must be established is whether, at the time the debtor made the implied representation of an intent to repay, the debtor knew the representation was false. In re Giuffrida, 302 B.R. at 123. See In re Mercer, 246 F.3d at 407. This element turns on the debtor's "actual state of mind . . . at the time the charges were incurred." In re Parkhurst, 202 B.R. at 822. The debtor's failure to repay, standing alone, does not establish a lack of intent to repay when the debt was incurred. In re Leventhal, 194 B.R. at 31. Rather, the creditor must show that the "`debtor knew full well that any professed intention to repay was false or was known by the debtor not to be well-grounded, and that he or she nonetheless deliberately used the card to obtain goods he or she knew were beyond his or her ability to pay.'" In re Parkhurst, 202 B.R. at 822 (quoting J.C. Penney Co. v. Shanahan (In re Shanahan), 151 B.R. 44, 47 (Bankr.W.D.N.Y.1993)).
Courts have identified many objective factors that may lend support to the inference that the debtor knew that the representation as to his or her intent to repay was false when it was made. Many of these are interrelated, and not every factor will apply in every case. These factors arise in the context of four questions, as described below.
In some cases, the question of the timing of the charges at issue may loom large, and may lend persuasive support to an inference of fraudulent intent. Factors including the length of time between the charges at issue and the debtor's consultation with a bankruptcy attorney, and the length of time between the charges and the debtor's filing of his or her bankruptcy petition, relate to this question. See Manufacturers Hanover Trust v. Dougherty (In re Dougherty), 143 B.R. 23, 25 (Bankr.E.D.N.Y.1992) (noting that "the length of time between the charges and the filing of bankruptcy" and "whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made" are among objective factors to be considered).
Another important question to be addressed is the frequency and amount of the charges at issue. Factors including the number and amount of the charges at issue, whether the charges exceeded the credit limit of the account, and whether multiple charges were made on the same day, inform this inquiry. See In re Dougherty, 143 B.R. at 25 (noting that "the number of charges," "the amount of the charges," "whether the charges exceeded the credit limit of the account," and "whether there were multiple charges on the same day" are among objective factors to be considered).
A third question of significance is the nature of the charges at issue. As other courts have found, and as the presumption of Section 523(a)(2)(C) confirms, the question of dischargeability is viewed *189 in a different light when the charges at issue arise from the debtor's use of credit for the necessities of life rather than for luxuries. See In re Dougherty, 143 B.R. at 25 (noting that "whether the purchases were made for luxuries or necessities" is among objective factors to be considered); 11 U.S.C. § 523(a)(2)(C). In addition, while many obligations that are the subject of dischargeability claims under Section 523(a)(2)(A) arise from a debtor obtaining new credit, in the form of new credit card charges, cash advances, or loans, other obligations may arise from a debtor restructuring his or her financial situation through credit card balance transfers, including transfers to take advantage of a lower interest rate or other more attractive credit terms, without increasing his or her total debt outstanding. Obligations arising from balance transfers may not implicate the same concerns.[1]
And finally, a fourth question that must be considered is the debtor's situation when the charges at issue were incurred. Courts have identified several factors that relate to this inquiry, including the debtor's financial condition, whether the debtor was employed, the debtor's financial sophistication, and whether the debtor's spending habits changed dramatically. In re Dougherty, 143 B.R. at 25 (noting that "the financial condition of the debtor when charges were made," "whether the debtor was employed," "the financial sophistication of the debtor," and "whether the debtor's spending habits suddenly changed" are among objective factors to be considered). Courts also consider whether the debtor had an objective ability to repay, and "a complete lack of ability to repay is one factor that may be considered." Jarczyk, 268 B.R. at 23. See In re Dougherty, 143 B.R. at 25; In re Giuffrida, 302 B.R. at 125; In re Leventhal, 194 B.R. at 30.
The timing of the charges at issue
Fleet alleges, and the record shows, that the seventeen charges at issue were made by the Defendant between November 13, 2003, and November 26, 2003, and the Defendant filed his bankruptcy petition on January 29, 2004. Complaint, ¶¶ 6, 9. The record also shows that the Defendant met with his bankruptcy lawyer on December 8, 2003. Petition, Statement Pursuant to Local Rule 10(f). Thus, the Defendant incurred the charges at issue between nine and eleven weeks before he filed for bankruptcy, and two to four weeks before he met with his bankruptcy lawyer. While the charges were incurred outside of the sixty-day statutory period prescribed by 11 U.S.C. § 523(a)(2)(C), they were made in sufficient proximity to when the Defendant met with his bankruptcy lawyer and to the Petition Date to suggest that the Defendant may have been considering seeking bankruptcy relief, and a discharge of these debts, at the time the charges *190 were made. And the Defendant has not appeared to offer a different explanation of these circumstances. Thus, the timing of the charges at issue supports an inference of fraudulent intent.
The frequency and amount of the charges at issue
Fleet alleges, and the record shows, that the Debtor made a total of seventeen charges over a period of fourteen days. See Motion, Exh. A (credit card statement for December 15, 2003, closing date). The amount of the charges within the fourteen-day period, $5,339.53, is more than one and one-half times the previous balance of $3,503.55. This is comparable to circumstances present in many successful challenges to dischargeability where debtors used their credit accounts freely and frequently in the period immediately preceding their bankruptcy filing. See, e.g., In re Jarczyk, 268 B.R. at 19-20 (summary judgment for debtor reversed where debtor charged over $7,000 in six months before filing for bankruptcy); In re Johnson, 313 B.R. at 130 (default judgment for creditor granted where debtor made seventeen transactions in eight weeks); cf. In re Olwan, 312 B.R. at 486 (default judgment for creditor denied where three transactions in a five-week period were at issue).
Fleet also alleges, and the record shows, that many of the charges at issue were made on the same day. In particular, the record shows that the Defendant made three charges on November 14, 2003, three charges on November 22, 2003, and two charges on November 24, 2003. See Motion, Exh. A (credit card statement for December 15, 2003, closing date). For these reasons, the frequency and amount of the charges at issue supports an inference of fraudulent intent.
The nature of the charges at issue
Fleet alleges, and the record shows, that the Defendant made several charges for items that are more in the nature of luxuries than necessities, including charges at a sporting goods store, a consumer electronics store, several restaurants, and a ticket service. See Motion, Exh. A (credit card statement for December 15, 2003, closing date).[2] In the absence of an explanation or contrary argument by the Defendant, the record supports an inference that some, and perhaps many, of the charges at issue were for items that were more in the nature of luxuries than necessities. Thus, the nature of the charges at issue supports an inference of fraudulent intent.
The Defendant's situation at the time of the charges at issue
The record shows that the Defendant's annual income was $55,000 in 2001 and $59,000 in 2002, and that at some point in 2003, the Defendant became unemployed and began to receive monthly unemployment benefits of $1,580.[3]See Petition, Statement of Financial Affairs, Items 1 and 2. The Debtor's Petition also shows total debt of $39,900 and an excess of *191 expenses over income of $286 per month.[4]See Petition, Schedules F, I, and J. Thus, when the charges at issue were made, the Defendant was unemployed, had substantial debt, and had expenses that exceeded his income. A difficult financial situation does not necessarily indicate that a debtor does not intend to repay a debt when it is incurred, and indeed, such circumstances may lead debtors to access credit. But the Defendant has not come forward to offer an alternative explanation of his situation.
The record shows that the Defendant was employed as a structural engineer for a portion of 2003, and that at some point in that year, he became unemployed and began to receive monthly unemployment benefits of $1,580. Petition, Statement of Financial Affairs, Items 1 and 2. Thus, the record supports an inference that, at the time the charges at issue were made  just over two months before the Petition Date  the Debtor was not employed, and may not have been employed for some months. See Schedule I.[5]
Fleet alleges, and the record shows, that the Defendant's account was opened in August 1997 and that the Defendant had an account balance of $3,503.55, before the charges at issue were made. Complaint, ¶ 3; Motion, Exh. A (credit card statement for December 15, 2003, closing date). The record also shows that in the fourteen days in which the charges at issue were made, the Defendant increased his balance by $5,339.53, or more than one and one-half times the pre-existing balance on the account. This suggests that the charges at issue were a change from the Defendant's prior spending pattern.
Taken together, the factors relevant to this inquiry, including the Defendant's lack of employment, his substantial debt and expenses that exceeded his income, and the increase in his use of the credit card account, indicate that the Defendant's situation at the time of the charges at issue supports an inference of fraudulent intent.
In sum, the record shows that Fleet has alleged facts sufficient to support a prima facie case that the Defendant knew the representations as to his intent to repay the charges at issue were false at the time they were made. This conclusion is based on the undisputed allegations and the inferences that they support, including that the charges at issue were incurred two to four weeks before the Defendant met with his bankruptcy lawyer and just over two months before the Defendant filed for bankruptcy; that the seventeen charges at issue were incurred in a period of fourteen days and in a total amount that was one and one-half times greater than the then-outstanding account balance; that the Defendant made multiple charges on the same day on more than one occasion within the fourteen-day period; that many of the charges at issue were more in the nature of luxuries than necessities; and that the Defendant was unemployed and had some $39,900 in unsecured debt and expenses that exceeded his income by $286 per month when the charges at issue were incurred. This conclusion is also based on the fact that the Defendant has not appeared in this matter to deny or offer an alternative explanation for Fleet's allegations.
*192 3. Whether the debtor made the representation with the intent to deceive the creditor
The third element that must be established is whether at the time the debtor made the false representation, he or she did so with the intent to deceive the creditor. In re Giuffrida, 302 B.R. at 123. That is, Fleet must allege facts sufficient to support a prima facie case that the Defendant made the false representations as to his intent to repay with the intent to deceive it. Because the "intent to defraud is rarely proven by direct evidence," courts assess this element using a "`totality of the circumstances'" approach to discern the defendant's subjective intent. In re Truong, 271 B.R. at 745 (quoting In re Owen, 234 B.R. at 860). In making this determination, it is appropriate to consider the same questions that are relevant to the second element, whether the debtor knew the representation was false at the time it was made. Colonial Nat'l Bank v. Carrier (In re Carrier), 181 B.R. 742, 747 (Bankr.S.D.N.Y.1995).
Here, the totality of circumstances surrounding the charges at issue support the conclusion that the Defendant made false representations as to his intent to repay with the intent to deceive Fleet. These circumstances include the timing of the charges, including their proximity to the Defendant's consultation with a bankruptcy lawyer and filing for bankruptcy. These circumstances also include the frequency and amount of the charges, including the fact that many charges were incurred in quick succession in a two-week period, several were made on the same or successive days, and they were in an amount that substantially exceeded the prior account balance. These circumstances further include the nature of the charges, in that many of the charges appear to be for items or services that are more in the nature of luxuries than the necessities of life. And finally, these circumstances include the Defendant's situation when the charges at issue were made, including the fact that he was unemployed, had a large amount of unsecured debt, and had expenses that substantially exceeded his monthly income. These circumstances, taken together with the Defendant's failure to offer any alternative explanation, show that Fleet has made out a prima facie case that the Defendant made false representations as to his intent to repay the charges at issue with the intent to deceive Fleet.
4. Whether the creditor justifiably relied on the representation
The fourth element that must be established is whether the creditor justifiably relied on the debtor's false representation. In re Giuffrida, 302 B.R. at 123. Thus, Fleet must show that it justifiably relied on the Defendant's false representations in extending credit to him. See RESTATEMENT (SECOND) OF TORTS § 537 (1977) ("The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if, . . . his reliance is justifiable"). This calls for the Court to consider "whether [Fleet], based on its credit screening and its relationship with [the Defendant] during [his] . . . card-use, had reason to believe [he] would not carry out [his] representation, through card-use, of intent to pay." In re Mercer, 246 F.3d at 423 (emphasis in original).
As the Supreme Court has stated, a creditor "is `required to use [its] senses, and cannot recover if [it] blindly relies upon a misrepresentation the falsity of which would be patent to [it] if [it] had utilized [its] opportunity to make a cursory examination or investigation.'" Field v. Mans, 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (quoting RESTATEMENT *193 (SECOND) OF TORTS § 541 (1976)). At the same time, the required inquiry is not onerous, and indeed, "need be no more than cursory." Daly v. Braizblot (In re Braizblot), 194 B.R. 14, 21 (Bankr.E.D.N.Y.1996). See In re Anastas, 94 F.3d at 1286 ("the credit card issuer justifiably relies on a representation of intent to repay as long as the account is not in default and any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable.").
Thus, if at the time the charges at issue were incurred, the debtor maintained a balance within his or her credit limits and made the payments required under the credit agreement, that would show an absence of "red flags" and lend support to an inference that the creditor justifiably relied on the debtor's false representations as to his or her intent to repay. And alternatively, if the debtor was in default at the time the charges at issue were incurred, or the creditor's initial investigation of the debtor should have raised a serious question as to the reasonableness of opening the account, those circumstances would amount to "red flags" suggesting that the creditor was not justified in relying on the debtor's false representations.
Here, Fleet does not allege, and the record does not show, that any "red flags" should have alerted Fleet not to rely on the Defendant's false representations as to his intent to repay the charges at issue. Rather, Fleet alleges that "the Plaintiff issued the credit card on the subject account to the Defendant based upon Defendant's representation of income when applying for credit and Defendant's debt to income ratio." Complaint, ¶ 4. Fleet further alleges:
[It] transacted the $5,339.53 in merchandise charges and services upon the Defendant's representations of his intent and ability to repay this debt [in] accordance with the terms of the agreement for the Account . . . [t]he account was opened based upon the Defendant's representation of income when applying for credit and the Defendant's debt to income ratio.
Affidavit of Robert Scott Leavelsey in Support of Motion for Summary Judgment dated June 22, 2004, ¶¶ 9, 12. The record also shows that the Defendant's account balance was within his credit limit as of the December 15, 2003, billing cycle, and indeed, that he was "selected to receive" a credit line increase as of that billing cycle. Motion, Exh. A (credit card statement for December 15, 2003, closing date). And here again, the Defendant has not disputed Fleet's allegations, or suggested an alternative explanation as to why Fleet's reliance was not justified. For these reasons, Fleet has made out a prima facie case that it justifiably relied on the Defendant's false representations.
5. Whether the creditor sustained loss or damage as the proximate consequence of the false representations
The final element that must be established is whether the debtor's false representations proximately caused the creditor to sustain loss or damage. In re Giuffrida, 302 B.R. at 123. If the creditor has shown that it incurred an expense through the extension of credit, and has not been repaid, then this element is likely to be satisfied. "[I]t is the debtor's use of the credit card that prompts the issuer to extend credit, and thereby results in loss to the issuer when the debt is not repaid." Jarczyk, 268 B.R. at 25. See also In re Mercer, 246 F.3d at 414-15.
Here, Fleet alleges, and the record shows, that credit was extended by Fleet to the Defendant on some seventeen occasions between November 13, 2003, and November 26, 2003, in the form of credit card charges, in reliance on his false representations that he intended to repay the *194 amounts incurred. Fleet also alleges that those amounts have not been repaid, and the Defendant has not shown otherwise. See Complaint, ¶ 7; Petition, Schedule F (listing the Defendant's unsecured nonpriority obligation to Fleet in the amount of $9,500). Accordingly, Fleet has established a prima facie case that it sustained a loss that was proximately caused by the false representations of the Defendant.

Conclusion
On a motion for a default judgment in an action under Section 523(a)(2)(A) of the Bankruptcy Code, the plaintiff must present a prima facie case from which "a factfinder could reasonably find every element that the plaintiff must ultimately prove to prevail in the action." Fisher, 114 F.3d at 1336. The Court should accept as true "all of the factual allegations of the complaint, except those relating to damages," and draw "all reasonable inferences from the evidence offered." Au Bon Pain Corp., 653 F.2d at 65.
Here, the undisputed allegations of the Complaint, the reasonable inferences that they support, and the record before the Court, make out a prima facie case that the Defendant knowingly made false representations as to his intent to repay, with the intent to deceive Fleet, at the time that he made the charges at issue. They also make out a prima facie case that Fleet justifiably relied on the Defendant's false representations, and suffered a loss that was proximately caused by those false representations. Finally, the Defendant has not appeared to oppose the Complaint, or to offer any alternative explanation for the matters alleged. For these reasons, the Motion for a Default Judgment will be granted to the extent that the charges at issue, totaling $5,339.53, are declared nondischargeable under 11 U.S.C. § 523(a)(2)(A). An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.

ORDER GRANTING THE MOTION OF FLEET CREDIT CARD SERVICES, L.P. FOR DEFAULT JUDGMENT
Upon the filing of the motion for default judgment by Fleet Credit Card Services, L.P. ("Fleet"), on August 13, 2004, in this Adversary Proceeding commenced by Fleet on April 26, 2004, to determine the nondischargeability of a certain debt; and the Court having considered the arguments presented by the papers and the oral arguments of Fleet presented at the June 14, 2004, and September 7, 2004, hearings; and for the reasons set forth in this Court's Memorandum Decision dated December 28, 2004; it is hereby
ORDERED, that Fleet's motion for default judgment is granted to the extent that the charges at issue, totaling $5,339.53, are declared nondischargeable under 11 U.S.C. § 523(a)(2)(A).
NOTES
[1] As Congress has observed:

Excessive debts incurred within a short period prior to the filing of the petition present a special problem: that of "loading up" in contemplation of bankruptcy. A debtor planning a[sic] file a petition with the bankruptcy court has a strong economic incentive to incur dischargeable debts for either consumable goods or exempt property. In many instances, the debtor will go on a credit buying spree in contemplation of bankruptcy at a time when the debtor is, in fact, insolvent. Not only does this result in direct loses for the creditors that are the victims of the spree, but it also creates a higher absolute level of debt so that all creditors receive less in liquidation.
Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1092 (9th Cir.1996) (quoting S.Rep. No. 65, 98th Cong., 1st Sess. 9 (1983)). "Loading up" does not seem to be implicated in the context of obligations arising from balance transfers.
[2] Other of the charges at issue may also be more in the nature of luxuries than necessities. Fleet alleges, and the record shows, that the Defendant made a charge in the amount of $1,000 and $2,000 at Thomas A. Law, M.D., on November 14, 2003, and November 26, 2003, respectively, and at Focal Point Optical in the amounts of $125 and $175 on November 22, 2003. While it is certainly possible that such charges were for necessary medical expenses, it is also possible that these charges were for discretionary or luxury items or services.
[3] The Defendant's Statement of Financial Affairs shows 2002 annual income of $59,000, 2003 annual income of $40,000 and 2003 unemployment benefits of $1,580 per month. This supports an inference that the Defendant had been unemployed for several months when the charges at issue were incurred.
[4] The Petition states that the Defendant's monthly expenses are $1,866 and his monthly income is $1,580. Petition, Schedules I and J.
[5] As noted above, the Defendant's Statement of Financial Affairs shows 2002 annual income of $59,000, 2003 annual income of $40,000 and 2003 unemployment benefits of $1,580 per month. This supports an inference that the Defendant had been unemployed for several months as of the Petition Date.